## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| HANGER SOLUTIONS, LLC,<br>        Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br>        Defendant. | CIVIL ACTION NO. 6:22-cv-00070<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT

Plaintiff HANGER SOLUTIONS, LLC (hereinafter, "Plaintiff" or "Hanger"), by and through its undersigned counsel, files this Original Complaint for Patent Infringement against Defendant CHARTER COMMUNICATIONS, INC., (hereinafter, "Defendant" or "Charter") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Patents-in-Suit"), copies of which are attached hereto as **Exhibit A, Exhibit B,** and **Exhibit C**, respectively:

| | U.S. Patent No. | Title |
|---|---|---|
| A. | 6,430,623<br>("'623 Patent") | Domain Name Routing |
| B. | 6,609,159<br>("'159 Patent") | Methods, Systems, And Machine Readable Programming For Interposing Front End Servers Between Servers And Clients |
| C. | 6,772,227<br>("'227 Patent") | Communicating Between Address Spaces |

2.      Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3.      Hanger is a limited liability company organized and existing under the laws of the State of Georgia and maintains its principal place of business at 44 Milton Avenue, Suite 254, Alpharetta, Georgia, 30009 (Fulton County).

4.      Based upon public information, Charter is a corporation duly organized and existing under the laws of the state of Delaware since at least July 9, 2003.

5.      Based upon public information, Charter has its principal place of business located at 400 Atlantic Street, Stamford, Connecticut, 06901 (Fairfield County).

6.      Defendant may be served through its registered agent, Corporation Service Company d/b/a CSC- Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

7.      Hanger repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

8.      This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.  This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

9.      Spectrum Mobile, LLC ("Spectrum Mobile") is a subsidiary of Charter and a Delaware limited liability company with an address of 12405 Powerscourt Dr., Saint Louis, MO 63131-3673.  Charter is the sole manager of Spectrum Mobile and has full authority to direct and control it.

10.      Spectrum Mobile Equipment, LLC ("Spectrum Mobile Equipment") is a subsidiary of Charter and a Delaware limited liability company with an address of 12405 Powerscourt Dr., Saint Louis, Missouri, 63131-3673. Charter is the sole manager of Spectrum Mobile Equipment

and has full authority to direct and control it.

11.     Spectrum Gulf Coast, LLC ("Spectrum Gulf Coast") is a subsidiary of Charter and a Delaware limited liability company with an address of 12405 Powerscourt Dr., Saint Louis, Missouri, 63131-3673. Charter is the sole manager of Spectrum Gulf Coast and has full authority to direct and control it.

12.     Spectrum Management Holding Company, LLC ("Spectrum Management") is a subsidiary of Charter and a Delaware limited liability company with an address of 60 Columbus Circle New York, New York 10023. Charter is the sole manager of Spectrum Management and has full authority to direct and control it.

13.     Charter Communications Holdings Company, LLC ("Charter Holdco") (as referenced in Charter's 10-K Securities and Exchange Commission filings from 2016-2020 10-K) is upon information and belief is a subsidiary of Charter and has an address of 12405 Powerscourt Dr Saint Louis, MO, 63131-3673.

14.     Charter Communications Operating, LLC ("Charter Operating") is a subsidiary of Charter and a Delaware limited liability company with an address of 12405 Powerscourt Dr., Saint Louis, Missouri, 63131-3673. Charter is the sole manager of Charter Operating and has full authority to direct and control it.

15.     Spectrum Mobile, Spectrum Mobile Equipment, Spectrum Gulf Coast, Spectrum Management, Charter Holdco, and Charter Operating are collectively referred to as the "Agents." Upon information and belief, the Agents do business and/or are registered to do business as Charter Communications, Inc. or Charter Communications with Charter's consent, and they carry out the business of Charter in, among other places, the Western District of Texas.

16.     Upon information and belief, Charter has contracted with the Agents and/or Charter

has the right to direct and control the Agents actions relevant to this operative complaint; Charter has consented and assented to the Agents acting on its behalf; and the Agents have consented to act on behalf of Charter.

17.    The Court has personal jurisdiction over Charter because: Charter has minimum contacts within the State of Texas and in this District; Charter, has purposefully availed itself of the privileges of conducting business in the State of Texas and in this District; Charter has sought protection and benefit from the laws of the State of Texas; Charter has established offices in the State of Texas and is registered to do business the State of Texas; Charter regularly conducts business within the State of Texas and within this District; and Plaintiff's causes of action arise directly from Charter's business contacts and other activities in the State of Texas and in this District.

18.    Charter, directly and/or through its Agents and intermediaries, ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its products and services in the United States, the State of Texas, and in this District.

19.    Based upon public information, Charter solicits customers in the State of Texas and in this District and has many paying customers who are residents of the State of Texas and this District and who use its products in the State of Texas and in this District.

20.    Upon information and belief, Charter, directly and/or through its Agents and intermediaries, has regular and established places of business throughout this District where it operates, sells, services, develops, designs, and/or markets and has operated, sold, serviced, developed, designed, and/or marketed during the relevant period of infringement, one or more of its infringing products at several facilities in this District, including at its facilities located at 215 Factory Dr., Waco, Texas 76710; 2720 West Loop 340, Waco, Texas 76711; 201 East Central

Texas Expressway, Suite 645, Harker Heights, Texas 76548; 3034 S. 31st St., Temple, Texas 76502; 1325 George Dieter, Suites CE02 & CE03, El Paso, Texas 79936; 6510 North Mesa, El Paso, Texas 79912; 7010 Airport Rd., El Paso, Texas 79906; 3151 SE Military Dr., Suite 101, San Antonio, Texas 78223; 6301 NW Loop 410, San Antonio, Texas 78238; 11745 IH 10 West, Suite 410, San Antonio, Texas 78230; 1109 E 5th Street, Block 3, Austin, TX 78702; 1000 East 41st Street, Suite 920, Austin, Texas 78751; 11920 Alterra Parkway, Suite 134, Austin, Texas 78758.

21.     Upon information and belief, Charter, directly and/or through its Agents and intermediaries, also maintains regular and established places of business in this District, including by maintaining and operating communications networks in this District, including on cellular towers and other installation sites owned or leased by Charter[1] and by maintaining or controlling a newsroom.[2] Also, Charter is engaged in activities including: transacting business in this district and purposefully directing its business activities, including the installation, maintenance, and use of infringing products and other related technologies in this District, and the sale or offer for sale of services and goods to this District to aid, abet, or contribute to the infringement of third parties in this District.

22.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(d) and 1400(b) because Charter, directly and/or through its Agents and intermediaries, has a number of regular and established places of business in Texas and this District, and the allegations of infringement involve actions within Texas and this District.  *See In re: Cray Inc.,* 871 F.3d 1355, 1362-1363

---

[1] Charter offers telecommunications services to "state and local government, public education, and other public entities in Texas" through the Texas Department of Information Resources in Austin. *See e.g.,* https://dir.texas.gov/View-Search/Contracts-Detail.aspx?contractnumber=DIR-TEX-AN-NG-CTSA-008.  It also offers telecommunication services to customers in Waco, Texas.  *See e.g.,* https://broadbandnow.com/Texas/Waco?zip=76710; https://broadbandnow.com/_Charter-Communications.

[2] 1708 Colorado St., Austin, TX 78701.

(Fed. Cir. 2017).  Charter is also registered to do business in the State of Texas, has offices in the State of Texas, has transacted business in the Western District of Texas, and has committed acts of direct and indirect infringement in the Western District of Texas.

## BACKGROUND INFORMATION

23.     The Patents-in-Suit were duly and legally issued by the United States Patent and Trademark Office (hereinafter, the "USPTO") after full and fair examinations.

24.     Plaintiff is the owner of the Patents-in-Suit, and possesses all right, title and interest in the Patents-in-Suit including the right to enforce the Patents-in-Suit, the right to license the Patents-in-Suit, and the right to sue Defendant for infringement and recover past damages.

25.     Plaintiff has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit.

26.     Plaintiff does not sell, offer to sell, make, or use any products itself, so it does not have any obligation to mark any of its own products under 35 U.S.C. § 287.

## DEFENDANT'S PRODUCTS AND SERVICES

27.     Based upon public information, Charter owns, operates, advertises, and/or controls the websites www.charter.com, www.charter.net, spectrum.net, and www.spectrum.com through which it advertises, sells, offers to sell, provides and/or educates customers about its products and services, including its Spectrum Web Services and internet and external virtualized network operations and IT infrastructure.

28.     Based upon public information, Defendant provides sales information, training and educational information, for its products.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,430,623

29.     Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

30.     U.S. Patent No. 6,430,623 (hereinafter, the "'623 Patent"), was issued on August

6, 2002 after full and fair examination by the USPTO of Application No. 09/492,565 which was filed on January 27, 2000. *See* **Ex. A**.

31.      Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '623 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its "Spectrum Web Services" which provide a method of private network communication between entities on at least www.spectrum.net.

32.      Based upon public information, the Spectrum Web Services have infringed one or more claims of the '623 Patent, including Claim 1, because, through its Spectrum Web Services because  it provides a method for communicating with entities (domains on various web servers) in a private network (LAN/VPN/DMZ/firewalled/etc.) that initiates communications (from outside the private network via external device) with a first entity (domain) using a unique identifier (URL, not an IP address) that is used below the application layer (transport layer), and where that first entity (domain) is in the private network (*e.g.,* private subnet), is an addressable physical entity (web server) that does not have a globally unique address (*e.g.*, using DMZ) and can communicate messages (packets) toward said first entity (domain) that reach said first entity via an intermediate entity (router) that has a first global address (IP address).

33.      Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

34.      Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 6,609,159

35.     Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

36.     U.S. Patent No. 6,609,159 (hereinafter, the "'159 Patent"), was issued on August 19, 2003 after full and fair examination by the USPTO of Application No. 09/201,303 which was filed on November 30, 1998. *See* **Ex. B**.

37.     Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '159 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its internal and external products using VMWare to virtualize its network operations and IT infrastructure ("Spectrum Virtualized Environments").

38.     Upon information and belief, the Spectrum Virtualized Environments meet each and every element of at least Claim 6 of the '159 Patent, either literally or equivalently.

39.     Based upon public information, the Spectrum Virtualized Environments have infringed one or more claims of the '159 Patent, including Claim 6, because it provides a method for running an interposed dynamically-loaded library (virtual switches) linked to a back end server (server with VMWare) in a given operating system space (VM Kernel); running a front end server program (Guest OS Virtual Machine) loaded in the given operating system space (VM Kernel); using the library to respond to standard operating system calls by the back end server, including using the library to respond to an operating system call by the back end server to accept a connection from a remote client (guest user on a back end server) by communicating the call and its parameters to the font end server (Guest OS Virtual Machine) over a first pipe; using the front end server to accept a connection from a remote client; using the front end server to communicate a socket associated with the client connection to the library (via system socket activation); and using the library to return program flow from the library's execution of the accept call back to the

back end server with information specifying the socket received from the front end server in the same format in which the operating system returns socket information in response to an accept call..

40.     Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

41.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 6,772,227

42.     Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

43.     U.S. Patent No. 6,772,227 (hereinafter, the "'227 Patent"), was issued on August 3, 2004 after full and fair examination by the USPTO of Application No. 10/147,442 which was filed on May 16, 2002.  *See* **Ex. C**.  A Certificate of Correction was issued on June 5, 2007.  *See id.*

44.     Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '227 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its "Spectrum Web Services" which provide a method communicating messages between entities in different address spaces on at least www.spectrum.net

45.     Based upon public information, Spectrum Web Services have infringed one or more claims of the '227 Patent, including Claim 1, because it provides a receiving a message (packet) from a first entity in a first address space (*e.g.,* 10.0.0.3), said message includes a destination network address and an identification of a second entity (www.spectrum.net) in a second address

space (53.71.37.188), said second entity does not have a routable address in said first address space (*e.g.*, using DMZ); determining a destination address in said second address space for said message based on said identification; and sending said message to a destination using said destination address (*e.g.*, using SNI routing) in said second address space (*e.g.*, DMZ).

46.     Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

47.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

48.     Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

49.     Plaintiff respectfully requests the following relief:

A.     An adjudication that one or more claims of the Patents-in-Suit has been infringed, either literally and/or under the doctrine of equivalents, by Hanger;

B.     An award of damages to be paid by Hanger adequate to compensate Plaintiff for Hanger's past infringement, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Plaintiff for Hanger's infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

C.     That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and,

D.     Any further relief that this Court deems just and proper.

Dated: <u>January 18, 2022</u>                          Respectfully submitted,

*/s/ James F. McDonough, III*
**ROZIER HARDT MCDONOUGH PLLC**
James F. McDonough, III (Bar No. 117088, GA)*
Jonathan R. Miller (Bar No. 507179, GA)*
Travis E. Lynch (Bar No. 162373, GA)*
3621 Vinings Slope, Suite 4300
Atlanta, Georgia 30339
Telephone: (470) 840-9505, -9517, -9514
Email: jim@RHMtrial.com
Email: miller@RHMtrial.com
Email: lynch@RHMtrial.com

**ROZIER HARDT MCDONOUGH PLLC**
Jonathan L. Hardt (TX 24039906)*
712 W. 14th Street, Suite C
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@RHMtrial.com

**ROZIER HARDT MCDONOUGH PLLC**
C. Matthew Rozier (CO 46854)**
2590 Walnut Street, Suite 10
Denver, Colorado 80205
Telephone: (720) 820-3006
Email: matt@RHMtrial.com

**ATTORNEYS FOR PLAINTIFF *Hanger Solutions, LLC***

* admitted to W.D. Tex.
** admission *pro hac vice* anticipated